## CIRCUIT COURT OF PRINCESS ANNE COUNTY

Ewing-Nussbaum-Hutcheson, Inc.

v.

W. T. Mason et al.

June 14, 1957

Ended File No. 4349

BY JUDGE H. W. MACKENZIE, JR.

The defendant's motion for a new trial in this case is predicated upon the action of F. M. Durham and Mrs. F. M. Durham in separately contacting two of the jurors over a weekend adjournment of the case after the same had been submitted to the jury but before the jury had reached its verdict.

Information of the contact was brought to the Court's attention by one of the jurors after the verdict had been rendered in favor of the plaintiff, and a rule was thereupon issued against Durham and his wife and the two jurors they were alleged to have contacted, the hearing being held several days later. Mrs. Durham was the sister of Mrs. Andrew Ewing, president of the plaintiff corporation, who had been present in the courtroom throughout the four-day trial of the case. Mr. Durham, who was auditor of the City of Virginia Beach, had testified for the plaintiff at the trial.

The testimony of Mr. and Mrs. Durham is that their daughter was to accompany the Ewings on a trip to Canada, and they were simply seeking information about the continuation of the case in order to have their child ready to go. There is no contradictory testimony, and indeed, the evidence of the two jurors corroborates their statement that this was the limit of the conversation.

Notwithstanding the fact that there is no positive evidence of prejudice resulting in favor of the plaintiff and against the defendant by reason of the Durhams' conduct, the Court is of the opinion that the resulting verdict in favor of the plaintiff cannot be allowed to stand under these circumstances.

The general rule on the subject of communications between jurors and witnesses contained in a recent annotation in 52 A.L.R.2d 182 is stated to be that mere communication between witnesses and jurors in a civil action is not grounds for the setting aside of the verdict or the granting of a new trial in the absence of a showing that the jurors were influenced by such communication to the prejudice of one of the parties to the action. But "in several cases, it appeared that the communication with a juror was by a witness who was not a party to the action but was nevertheless somewhat interested in the result by reason of his relation to a party as an employee 'officer' or the like. The losing party has been held entitled to a new trial, where the conversation of an interested witness with a juror was likely to produce a prejudicial effect upon the juror."

The Virginia rule is summed up in this language in the recent case of *Dozier v. Morrisette*, 198 Va, 37 (1956): "We, however, subscribe to the exception that private communications, possibly prejudicial, between jurors and third parties, are forbidden and invalidate the verdict unless the harmlessness is made to appear." It is thus obvious that the Virginia rule is that where a witness who is interested in the outcome has communicated with a juror, a new trial must be ordered unless the harmlessness is made to appear.

Notwithstanding the fact that there is no affirmative evidence of prejudice in this case, a number of circumstances are present which are inconsistent with the establishment of the harmlessness of the communication. After the case had been given to the jury at 5:45 p.m. on Friday, July 18th, and after the jury had deliberated for a while and the proceeding had recessed until the following Monday morning, the Durhams had, according to their testimony, made no effort to ascertain the status of the litigation until Sunday afternoon, when Mr. Durham made his call to juror Avelt which he said was because the Ewings' line was busy. He then got the information but failed to communicate it to his wife who some time later "in the evening" called the juror, Mrs. Michaels, and asked for the same information.

Whatever may have been the intentions of Mr. and Mrs. Durham, it undoubtedly conveyed to the jurors the fact that these personal friends or acquaintances of theirs were interested in the action they would take in the pending suit. Indeed, the apparently harmless inquiry would be calculated to have a more beneficial effect with conscientious jurors than would a blunt attempt to influence their decision which would be calculated to raise resentment.

In a situation of this kind, the jurors could not be expected to admit that their verdict had been in any way affected by these phone calls. Furthermore, if they were, the jurors themselves are unaware of it.

It is equally important that the appearance of evil be avoided as the evil itself, if the public and the litigants are to have confidence in the impartial administration of justice by our courts. As stated in *Belcher v. Estes*, 99 Maine 314, 59 A. 439: "A decent regard for the proper administration of justice compels the Court to hold parties not only for their own misconduct, but for the indiscretions of their friends in conveying to jurors private information relating to a case on trial before them."

This attempt on the part of the Durhams to communicate with these jurors under the circumstances set forth above to seek information as to when the Court would reconvene (when according to their story they were interested solely in when deliberations of the jury would be concluded) makes it impossible for this court to say that the harmlessness of these communications has been made to appear.

The verdict will be set aside and a new trial ordered.